**GLASS CITY BLACK BROTHERS UNITED, et al., Plaintiffs,**

v.

**Carl NEEB, et al., Defendants.**

No. C79–749.

United States District Court, N. D. Ohio, W. D.

March 9, 1982.

---

MEMORANDUM AND ORDER

DON J. YOUNG, Senior District Judge:

This cause came on to be heard upon plaintiffs' motion for supplemental relief. Plaintiffs have requested injunctive relief, and a hearing was held on February 17, 1982. Both plaintiffs and defendants submitted evidence at the hearing, and the matter is now before the Court for decision.

This litigation began approximately two years ago by the filing of a complaint which alleged that defendants discriminated on the basis of race in their promotional policies and practices within the City of Toledo Fire Division. On March 21, 1980, the parties apparently settled the matter and a consent decree signed by the parties and adopted as the order of the Court, was issued. Certain goals were established in the consent decree to achieve racial parity in the ranks of lieutenant and captain in the Fire Division.

The sad fact is that after over two years of proceeding under the terms of the consent decree the number of black lieutenants and captains is not only less than that spelled out in the decree, it is less than the number there were before this suit was filed. The racial composition of the command ranks of the Fire Division at the time of the consent decree and at the present time is shown below:

R. Michael Frank, Toledo, Ohio, for plaintiffs.

John J. Burkhart, Law Dept., and Ted Iorio, Toledo, Ohio, for defendants.

| Position | Number (1980) | (1982) | White (1980) | (1982) | Black (1980) | (1982) |
|---|---|---|---|---|---|---|
| Chief | 1 | 1 | 1 | 1 | 0 | 0 |
| Deputy Chief | 5 | 5 | 5 | 5 | 0 | 0 |
| District Chief | 16 | 16 | 15 | 15 | 1 | 1 |
| Captain | 32 | 28 | 32 | 28 | 0 | 0 |
| Lieutenant | 90 | 87 | 85 | 84 | 4 | 2 |

Defendants signed the consent order on March 21, 1980, which contains the following provisions:

WHEREAS, Petitioners commenced this action in an effort to redress discrimination against blacks in promotional opportunity within the Fire Division, and

WHEREAS, the City of Toledo is strongly committed to the concept of affirmative action to erase any vestiges of past employment discrimination within its municipal government, and

\* \* \* \* \* \*

[IT IS SO ORDERED]

(8) That it is the goal of this Order that the Defendants City of Toledo, the Toledo Civil Service Commission, and the Fire Division achieve racial parity in the fire lieutenant and captain ranks in each year as set out below.

| | First Year (3/80–3/81) | Second Year (3/81–3/82) | Third Year (3/82–3/83) |
|---|---|---|---|
| Lieutenant (black) | 7 to 15 | 11 to 15 | 15 |
| Captain (black) | 7 to 15 | 4 to 5 | 5 |

The Defendants shall take all reasonable and necessary steps, including a liberal interpretation of Administrative Regulation 13 of the City of Toledo, in order to reach these goals.

\* \* \* \* \* \*

IT IS FURTHER ORDERED that this Court shall retain continuing jurisdiction over this action to ensure compliance with and to effectuate the terms and provisions of this Order. The jurisdiction of this Court shall terminate either upon its own motion or upon that of any party at such time that the court concludes that the rights of the Plaintiffs which are the subject of this proceeding have been ensured.

Administrative Regulation 13 requires that the city manager—

Instruct the administrative staff to give special consideration to applicants seeking employment who qualify on a relatively equal basis in order to realize the concept of a well-integrated department. This will be further emphasized in those departments in which integration is disproportionate or non-existent.

On November 21, 1981, defendants administered promotional examinations for the positions of lieutenant and captain. One black passed the captain's exam and three passed the lieutenant's exam. The eligibility lists, utilizing the "rule of three" established after the test, placed Earl Landy, the one black who passed the captain's test, in the twenty-third position. The three blacks who passed the lieutenant's exam ranked in the upper third, being in positions twelve (12), twenty-seven (27) and thirty-seven (37) out of eighty-three (83).

The "rule of three" limits promotion to any vacancies in the ranks of lieutenant or captain to the top three individuals on the eligibility lists. Plaintiffs seek to have that rule set aside and thereby permit the City to promote any of the blacks on the lieutenant's or captain's list irrespective of their relative position.

At the hearing on this motion, Dr. Albert Palmer testified for the plaintiffs. Dr. Palmer, an expert in the area of promotional examinations, was appointed as a result of the consent decree to evaluate the exams and make determinations as to their validity. Additionally, he was to make recommendations to the Civil Service Commission (CSC) during each step of the validation process. In a report submitted to the Court and during his testimony, Dr. Palmer certified that the promotional exams were fair, job related, and not biased against minorities. Despite this endorsement of the test itself, Dr. Palmer suggested that the subsequent scoring method could be improved so as to increase the number of minorities who passed the exams. The Civil Service Commission presently uses a rather complicated mathematical formula to combine the scores received on the two parts of the exam. The doctor suggested using a simpler method based upon the percentage of correct answers. While neither method is scientifically better than the other, if Dr. Palmer's method were used, two additional blacks would have received passing scores on the lieutenant's exam. Myron Steward would move from twelfth to tenth, Bruce Cook would move from twenty-seventh to forty-fifth, and Glen Washington would move from thirty-seventh to twenty-second. Dr. Palmer recommended to the CSC that it change its scoring method, but that recommendation was not adopted.

The Court notes these changes in test scoring even though plaintiffs have not requested the Court to order adoption of Dr. Palmer's method. It is significant because

it tends to show that test results are not an ideal indicator of an individual's qualifications. Use of a different scoring system, though equally valid, produces significant changes in the test results. Dr. Palmer testified that all those who passed the test would be relatively equally qualified for the job, a consideration of extreme importance in light of Administrative Regulation 13. Thus, if the rule of three were eliminated, the standards for command officers would not be lowered. The consent decree recognizes that some cutoff point must be maintained in deciding who should be eligible for promotion, but the evidence indicated that when picking from those who passed the test the rankings are little more than rough guesses that one person would perform in the job better than another.

The City has vigorously opposed the request to waive the rule of three. It argues that the city charter requires it to make appointments from the top three people on the eligibility list, and further that the consent decree did not abolish this rule. Section 172(f) of the Toledo City Charter states that the rules of the CSC shall provide "[f]or the certification to the appointing authority from the appropriate eligibility list to fill a vacancy in the competitive class, of the three persons standing highest on such list..." The question thus becomes, did the consent decree explicitly or implicitly direct the City to waive this rule in order to attain the affirmative action goals contained therein, and, if it did not, may this Court now amend or modify the decree to do so.

 A consent decree is a strange hybrid of the law, being both a binding contract and a court order. *Brown v. Neeb*, 644 F.2d 551, 557 (6th Cir. 1981). To the extent that it is a contract, it may be interpreted and, if appropriate, a court may enter supplemental orders in accordance with the instrument's language. *United States v. Swift and Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1931). To the extent that the decree is a court order, however, a court may modify a consent decree under certain conditions. Although a heavy burden has been placed upon defendants seeking to reduce obligations stated in the consent decrees, the United States Supreme Court differentiates plaintiff's requests to reshape relief where the decree has not been effective in achieving its intended purposes. Thus, in *United States v. United Shoe Corporation*, it was declared that if the decree's purposes have been frustrated, "the District Court should modify the decree so as to achieve the required result with all appropriate expedition." 391 U.S. 244, 252, 88 S.Ct. 1496, 1501, 20 L.Ed.2d 562 (1967).

 In this matter, the parties agreed to a consent decree which was identical in some important respects to the decree used in *Sarabia v. Toledo Police Patrolman's Association*, 601 F.2d 914 (6th Cir. 1979), and *Brown v. Neeb, supra*. Because of this, it will be instructive to refer to the Sixth Circuit's previous analysis.

In *Sarabia*, this Court considered an action filed for the purpose of increasing minority representation in the Toledo Police Department. The rule of three was suspended to allow the appointment of otherwise relatively equally qualified black applicants, where the rule's application had the effect of frustrating the stated goal and language of the consent decree. The Sixth Circuit affirmed the district court's exercise of power. 601 F.2d at 919. Both the district and appellate courts found that the decree authorized the supplemental order suspending the rule of three. Specifically, it was noted that the City of Toledo committed itself "to the concept of affirmative action to erase any vestiges of past employment discrimination within its municipal government" and the city reaffirmed its support of Administrative Regulation 13, previously quoted in this memorandum of law. The *Sarabia* consent decree specified no manner of certifying applicants and, in light of its language and the absence of meaningful progress towards integration, the court of appeals stated that the supplemental order "appears to afford the very type of special consideration to minority candidates required by paragraph B(2) of [Administrative Rule] 13, which was specifi-

cally adopted in the decree." 601 F.2d at 919.

In another case affirmed by the Sixth Circuit, *Brown v. Neeb*, it was held that this Court had the authority, pursuant to a modification of the decree, to proscribe layoffs on the basis of seniority. In *Brown*, the proposed layoffs threatened to eliminate much of the city's slow progress towards integrating its fire division. 644 F.2d at 557–58. The new circumstances, layoffs, mandated the district court's modification of the decree. 644 F.2d at 560.[1]

In light of the aforementioned cases, it is clear that this Court has the power to interpret the decree so as to permit the requested supplemental order or, in the alternative, modify the consent decree.

It is most difficult to reconcile the City of Toledo's position with this District Court's and the Court of Appeals' opinions in *Sarabia*. Although that decision does not have *res judicata* effects on this action, its precedential value is inestimable.[2] The city's reliance on narrowly interpreted rules and regulations cannot be permitted to override that which has been agreed to and adopted as a judicial act. *See Sarabia v. Toledo Police Patrolman's Association, supra*.[3] However, if the decree did not already govern this controversy, modification is proper under *Brown*, as it was unforeseeable at the time of the entering of the decree that, in spite of the decree's statement of purpose and reference to Administrative Rule 13, the city would steadfastly rely on the administratively convenient rule of three.

The Court is reluctant to continue to play an active role in this matter; however, any analysis of the promotion of blacks in the Fire Division reveals that the consent decree has been an ineffective instrument. The court would be more tolerant if any progress had been made towards the stated goals. Instead, there are even *fewer* blacks in command positions now than at the time the decree was entered.

The consent decree commits the city to promoting relatively equal minority candidates. The city's utilization of its rule of three has prevented the attainment of the stated goals. Previously, it was illustrated that, in light of the arbitrary test-scoring procedures and application of the rule of three, not all relatively equally qualified candidates are certified as candidates. Accordingly, the City of Toledo will be prohibited from utilizing the rule of three for purposes of certifying promotional candidates in the Fire Division. Instead, the City must develop a system of certification which recognizes "relative equality" among its candidates in order to achieve the stated goals of the earlier consent decree. The Court takes this action in connection with its power to issue supplemental decrees or, in the alternative, modify the decree.

THEREFORE, for the above stated reasons, good cause appearing, it is

---

1. The appellate panel divided on the question of whether the decree, properly interpreted, proscribed the layoffs. This division need not concern the Court in this case, however, because the basis for the earlier split was an Ohio statute, O.R.C. § 124.37, which required seniority-based layoffs. There is no state statute requiring the city's restrictive interpretation of the rule of three; moreover, the provision for the rule in the city's charter did not preclude an interpretation of the consent decree in *Sarabia* which would permit the rule's suspension. Certainly no statute requires the municipality's restrictive reading of the rule.

2. Although in *Sarabia* and this order it would not have been proper to forbid the application of the rule of three in situations not yet before the Court, it now becomes even more difficult

for the city to reconcile its application of the rule where its effect is to impede the implementation of consent decrees. In view of these cases, such behavior in the future might be proof of the city's intention to frustrate the goal of integration.

3. "Applying basic principles of constitutional law, neither state law nor contract law may be used as a defense when the result would be to impede a court-ordered remedy for constitutional violations." *Arthur v. Nyquist*, 520 F.Supp. 961 (W.D.N.Y.1981); *See also Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974); *Castro v. Beecher*, 522 F.Supp. 873 (D.Mass.1981); *Oliver v. Kalamazoo Bd. of Education*, 498 F.Supp. 732, 751 (W.D.Mich.1980).

ORDERED that the City of Toledo be, and it hereby is, enjoined from utilizing the "rule of three" for purposes of certifying candidates for the positions of Chief, Deputy Chief, District Chief, Captain and Lieutenant during the pendency of this action.

IT IS SO ORDERED.